We'll hear argument in our third case of the morning, case 23-4306, United States v. Sagana Good morning, Mr. Miller Good morning, Your Honor May it please the Court, my name is Richard Miller, and I'm here on behalf of defendant appellant Bonifacio Sagana. I'd like to reserve two minutes for rebuttal. I'll be focusing my remarks on the insufficiency of the evidence issues, and I'll touch on the leader organizer of sentencing enhancement at the end. Mr. Sagana was convicted of conspiring to produce a CNMI driver's license without lawful authority, yet the government failed to show that it was unlawful for the Bureau of Motor Vehicles to renew Bernardita Zata's driver's license. They claimed it was unlawful for the Bureau of Motor Vehicles to renew her license because she was an alien who was out of immigration status, but they did not introduce into evidence any CNMI statute or regulation that in 2017, the time of the alleged offense, would have prohibited Bureau of Motor Vehicles from renewing a license for an undocumented alien. The implication of this argument would appear to be that there was just no purpose to have falsified the I-94 and taken that to the DMV. Possibly no. So why would your client have gone to the trouble if it wasn't necessary? My client had a misunderstanding about what was lawful and what wasn't. Maybe it was unlawful in the past, but in 2017, it wasn't unlawful. Maybe it had a law had been passed that would make it unlawful, but it wasn't in effect in 2016. Maybe it didn't go into effect until 2018. Maybe he and Ms. Zata were mistaken. Maybe there were rumors in the community that this was necessary. Okay. Well, I mean, these are all maybes, but I take the point that the implication of this position is that this entire scheme was just some kind of mistake or misunderstanding, and there was no actual need to go and do what he was doing, if you're correct on this point. Well, that's true, but the issue is whether the government provided evidence to support its burden. It's the government's burden to show that it was without lawful authority. It's not our burden to show that it was with lawful authority. I think we've probably all had experiences where agencies asked us to provide certain types of information in an application, and in fact, the agency had no lawful authority to ask for that, but they did it because they had record keeping. They were interested to find out something, and if you say, well, I don't have to give my social security number, they said, well, yes, you have to. Show me the regulation. Show me the law. We don't know. Maybe that's the case here. The government didn't carry its burden. The only testimony that was offered from a law enforcement officer, Agent David West, who's a Homeland Security agent, he was not a CNMI officer, and Agent West testified that he couldn't tell if there was a law or not. The government offered no other theory of unlawful authority, such as flunking a test or failing to take a road test. That was the issue that this court addressed and saw in Turchin, or say, failing to read an eye chart. Their only theory of unlawfulness was that Ms. Zada was out of status. The government's backup position in its brief is that to convict for conspiracy, they did not have to prove the actual production was unlawful. This makes no sense. Just because the object of a conspiracy need not be completed does not mean a jury can convict a person of conspiring to do something that isn't unlawful. In Ninth Circuit case law, we cited to Everett and Lothian in our reply brief, it's clear that if the contemplated act isn't unlawful, there can be no conspiracy to commit it. The government trumpets a testimony of federal agent, also an HSI agent, Frederick Jonas, as to why copies of passports and I-94s would be in BMV files, and this goes to Judge Bress's question. But Agent Jonas also testified that he didn't know if the so-called requirement was actually according to any CNMI law, and that's at ER 491. Agent West testified the same. It's a requirement, but quote, I couldn't tell you if it's a law or not, and that was it. Commerce issue, so your position is that this didn't affect commerce because she was not able to leave, she wasn't able to come even to Hawaii with this driver's license? That's correct, Your Honor. Okay, well, so why doesn't it still affect commerce just because the driver's license would enable her to do things on the island that would affect commerce? We don't know if the driver's license would. We don't know if it was a driver's license with a real ID license or not. Well, but I mean, it's sort of common knowledge that having a driver's license gives you the ability to travel around and do things even within an island. There's a possibility to affect commerce through that, no? Well, possibly there is, but Ms. Saad testified that she had no intention of traveling with a license. She was questioned on that by defense counsel, and also she could not have gotten on a plane and traveled anywhere because it was uncontroverted that she was an unlawful alien. She was not in the United States with any status, and she simply could not have gotten on a plane and gone anywhere else in the United States. What about her affecting interstate commerce by, I mean, does Saipan make its own cars? No, Saipan doesn't make its own cars. So they're all imported? That was the government's position, and there were three stipulations that we stipulated. Court took judicial notice that cars are not made on Saipan, gas is not produced or refined on Saipan, and that equipment that Department of Motor Vehicles uses to produce driver's licenses come from off-island. And it's our position that that's simply not enough. If that's enough to satisfy the interstate commerce federal nexus, then essentially the government doesn't have to prove the federal nexus, because all of those things would be sufficient to prove federal nexus in California, or in Nevada, or in Hawaii, that you don't have, not all cars that are sold in in California are produced in California, not all equipment that motor vehicles uses to create driver's licenses are produced in California, and despite the refineries in Richmond, California, not everything, not all gas in California certainly isn't sourced in California, nor is it refined in California. So essentially the government doesn't have to prove this at all, and the federal government can go in to any state in the Ninth Circuit and say we don't have to put on any evidence actually. Can you give me an example then, or a hypothetical, how it would work then with, given the fact that she was unable to travel outside of the country, so, I'm sorry, the area, what does that look like? Because what I'm hearing you say is that the Commerce Clause is only impacted if she does something substantial, like go, you know, tries to fly somewhere else, but she can't do that because she doesn't have legal standing. So where is it implicated then? So, Your Honor, you use the word substantial, and that takes me back to Supreme Court rulings about the extent of Congress's power to regulate interstate commerce, and Supreme Court has said repeatedly that it has to have a substantial effect on interstate commerce. That's the limitation on Congress's power. Congress may write a law that says inter-effects interstate commerce, and that's minimal, but minimal is going to be, still has to be within the overall constitutional power, and that constitutional power is a substantial effect. We would assert that under the fact in this case, particularly with respect to Ms. Zanna, that simply the prospects, and again, we're talking about hypothetically, well, couldn't she use that driver's license to drive somewhere if she went elsewhere? That's extremely attenuated, because the chance of her getting somewhere other than the CNMI is almost nil. I mean, that's true. The question is, does it matter? Because with the driver's license, she has greater ability to do commerce within CNMI, and that would bring in a whole host of other interstate commerce features to her existence there that she might not have if she didn't have the driver's license. Gasoline is the example that was offered at trial, but we could come up with a lot of other ones, too. Your Honor, gasoline, for example, was on contrary that Ms. Zanna had a car and was driving anyway. Now, even if the driver's license wasn't renewed, she was driving, so I would still argue that that effect is not significant enough, and I would go back to case law. For example, the Turchin case in the Ninth Circuit, where what the court pointed to was that it was a commercial driver's license and for use on interstate highways that would allow her to travel elsewhere. The court there, and in other cases that are cited in our brief, is always looking for something more than what the government has provided here. Again, if what the government has provided in evidence is enough, then the federal nexus is essentially meaningless. Can you address the... Well, Mr. Turchin also said the effect can be potentially modest and indirect. Yes. I mean, it's pretty broad language. It is pretty broad language, potentially modest and indirect, but how indirect is and how modest? Modesty still has to be some non-zero sum. It has to be some distance greater than the distance that you can possibly imagine, any connection you can possibly imagine, to be meaningful. We need some meaningful guideline here. Otherwise, the federal nexus is essentially proved in any driver's license case at all under any circumstances. Can you address the organizer enhancement? Sorry? Can you address the organizer enhancement? Thank you, Your Honor. The district court incorrectly found that Mr. Sigano was a leader organizer under Section 3B1.1, enhanced him by two levels, and that thereby deprived him of a two-level reduction as a zero-point offender. And the main case that the government relied on and that the court relied on was the Vinge case out of the circuit just last year. Vinge said that the organizer enhancement applies when the necessary influence and ability to coordinate the behavior of others so as to achieve the desired criminal result. And what's interesting in Vinge is that the court found there that his co-conspirator did not qualify for the enhancement because he did not manage drug distributors or reach out to and place orders with drug suppliers. And here in this case, the only connection is with Ms. Zada. And we would submit this more like a buyer-seller relationship that one sees in drug cases. There was no evidence that he had conspired with anyone in Bureau of Motor Vehicles. No one from Bureau of Motor Vehicles testified as to some co-conspirator lurking in the Bureau. There's nobody on the far end. And in fact, if Mr. Sigano was producing on his own a fake I-94 that looked on all appearances at first blush like it was real, he wouldn't need to have anyone that he was conspiring with within Motor Vehicles because he's coming up and producing it and giving them an I-94. And the clerk looks at and says, that's fine. That's all we need. So there was no evidence of anyone else. For that reason, we think the court misplied. The suggestion from the government would seem to be that Zada was not just a sort of passive person in this in the sense that he involved her to accomplish the end goal of getting the driver's license. Yes, she approached him, but then, and he did some things on his own, but then he had to utilize her to accomplish the end. And so why would that not be enough to be an organizer? I don't think he's utilizing her in any way different from, say, someone who's selling drugs that says, look, I need you to meet me over at the corner on this street, and I want you to wear something red. That way I'll recognize you, and this, that, or the other, telling on certain things in order to get this transaction done. I don't see it as any more involved than that. She wasn't producing the I-94s. What about the suggestion or the indication of the record that he had done this for other people? That's why she went to him. She knew that he was somebody who could help with this issue. Garcia did the same thing. But the inference is that he was doing this more than once. He wasn't charged with, Mr. Garcia was not named as a co-conspirator, and there weren't unindicted co-conspirators here. I don't think that the district court judge relied on that in her sentencing. So I don't think that's a... Would it be improper to rely on that? No, I don't think so anymore. It would be proper to rely on, to say that someone was in a drug conspiracy with all the people that he sold drugs to, and they come to him because they've heard that he sells drugs, and that doesn't make him a conspirator with all them for purposes, at least of the enhancement. If I may, Your Honor, I see I'm almost out of time, but I just wanted to point out, I went to the Bureau of Prisons inmate locator yesterday. Mr. Sagan is still due to be released, estimated on July 30th. He was incarcerated in March of last year. So if the court does find in his favor on the sentencing argument, he will... We would ask the court to remain with instructions to release him pending resentencing. If the four points that he lost were given back to him, he would go from offense level 17 to offense level 13. The district court judge sentenced him to the bottom end of the offense level 17 range, 24 months. The bottom end of the offense level 13 range is 12 months. So there's a good chance that if the case is remanded on sentencing, that in fact he's basically served his time by now. Thank you, Your Honors. Okay, we'll put two minutes on the clock for rebuttal. Thank you, Your Honor. I'll hear from the government. Good morning. May it please the court. Garth Backe on behalf of the United States. This court should affirm defendant's conviction and sentence. The government presented sufficient evidence at its jury trial. The lower court did not abuse its discretion in its handling of Wadir, and the lower court did not commit clear error in its factual finding that this appellant was an organizer under 3B1.1 of the sentencing guidelines. Maybe we could just start at that last point since that's where we just were. So why was he an organizer when, you know, she had come to him? Why is this, is this different than the situation where somebody wants to buy drugs and the dealer says, yeah, meet me on the corner? We don't usually think of the dealer as an organizer in that case. Is that, is this case different? I believe it's different. I don't think the initial overture is determinative. Let me just back up one second. The defendant's entire argument regarding leadership is hinged on Zata not being a participant, although she was found by the jury to be his criminal co-conspirator in this case. She is the only co-conspirator, and so he was found guilty of conspiring with her. So she meets the definition of a participant under the guidelines. But you are correct, Your Honor, that maybe she initiated the first contact, but from that point forward, he led her actions in every respect, from the time to where, time and place to meet. They went to the cashier. He went and paid. She waited outside. He then brings her over to the DMV. She sits on the side. He processes the documents. He actually submits all of her applications. So she is literally following him. And so I organize, it seems to me that Vinge is not quite saying organizer really means literally to organize. There is a leadership type of component to it. Counsel, let me ask then, explain to me how that's different than facilitation of what, I mean, I kind of read what Mr. Sagana did. It was more to facilitate Ms. Zata being able to get her driver's license. Explain to me why it's more organization and less facilitation. I'm not sure I completely understand your question, Your Honor, but I still don't think facilitation, if he was deemed a facilitator, I just don't think that would be dispositive and therefore the organizer enhancement would not apply on the facts that are presented at his trial. Again, he is, she knows nothing. He knows everything. But for his connections, his knowledge of the documents, this crime is not being completed. Okay. So I mean, if she had come to him and said, I need this driver's license, and he said, wait right here, and he disappeared for an hour and came back with a perfect driver's license for her, I take it your position is in that case, he's not an organizer? I guess he would not be an organizer. What would he have organized at that point? I mean, she's just standing there doing nothing. So I'm trying to figure out what it is that she did here that he had her do that causes this to not be that situation. Be present. Because be present, she must be there to get the driver's license. She sat and took the picture. So she had to be there. He could not accomplish this without her presence. And again, this driver's license was for her, not for him. And so she sat there and waited while he processed the document. And at the appropriate time, she stood up and took the picture. And then from that, the driver's license was produced. Okay. But somebody to get drugs has to be there to get them too, at least in many cases. So what would be the difference if somebody wants to buy drugs and the drug dealer says, okay, meet me on the corner of these two streets. And the person goes and does that. And the transaction then happens. Is that, is that, is the drug dealer then an organizer? I just, I apologize. I just don't think that's actually comparable to this situation. And so that's what I want to understand is why. Because it, it takes two to tangle in order to produce this driver's license. She did not have the knowledge necessary to procure it. He cannot get the driver's license without her presence. Again, when it comes to, I mean, I think Vinge talks about the ability to influence someone's actions. I mean, we had that literally in this case where she was, again, following him, following his cues, producing the documents. The, the, everything was at his, his suggestion. Does it matter that she went and asked for it though? That's what I said in the beginning, Your Honor. I, I understand that she initiated that and I, that kind of speaks to the word organized, but that's not what Vinge said. I don't think that the initial overture is dispositive. Are there cases where the, the person being organized, if you will, was the person who essentially requested the wrongdoing? I mean, because we have cases, organizer cases, where people are, you know, underlings in a, in a unlawful operation, but here that, you know, she came to him and are there cases where that, Ninth Circuit cases or other cases that you're aware of where, where that was the fact pattern? I'm not, Your Honor, and I don't know if any parties or even the district court considered any other case but Vinge, and to the, to, to the extent that, that, that limits us, but, and, and to the extent I'm limited in only arguing that he meets the definition of organizer, I think of a leader, which is the other component of 3D1.1. He definitely led her, and I, I don't think we need to. What, what's your position on whether one can consider evidence or inferences that he led other people also? Could this enhancement be justified on that basis? No, Your Honor, the relevant conduct is only going to be determined by his conduct with Ms. Sato. Okay. If I may, Your Honor, each one of the, the basis this defendant puts forth to upset the jury's verdict and the lower court rulings are rests on a faulty premise. First, contrary to the claim, his claim, the government was not required to prove as an essential element that the unlawful, that the production was, in fact, unlawful. Now, to be clear, if there is a statute, local statute, that says you must have lawful status to receive a driver's license, to the extent the court was concerned about that. Second defendant is… Did you cite the statute, or…? Your Honor, yes, it's a, the site, it's a local law, 9 CMC 2208, and it was cited in the government's trial brief. It was not… Cited in your brief here? No, Your Honor. So, it's 9 what? I'm sorry, 9 CMC 2208. If you google that, it'll come right up. But this, Your Honor, and I apologize, this is the, this was about the 15th case that we had under similar facts. Everyone was operating and understanding that this was, in fact, unlawful. The question is whether we presented sufficient evidence at trial, but this is, in fact, this, it was, in fact, lawfully procured. But it was not, the unlawful production was not an essential element of this crime. If I may continue, the defendant is incorrect in inserting, asserting the pre-trial publicity in this case, or in any case for that matter, divest, divest the trial court of its discretion and requires it to follow a precise rule relative to the wide-area examination. Finally, in regards to the defendant's interstate commerce, uh, argument, none of the cases he relies upon stand for the proposition that the government's evidence on this point was insufficient. Indeed, he fails to cite a single case holding that the government had not met its burden and the defendant was entitled to a judgment of acquittal. In other words, no case put forth establishes the type or amount of evidence legally required in order to, in order for the government to prevail. Now, if I might pause and address this argument in greater detail. What happened in this case was, for all intents and purposes, a commercial transaction. In exchange for money, the Bureau of Motor Vehicles produced a product. That was a made-to-order product. It wasn't off the shelf, but, but for that money, that product is not getting made, and that product was produced and manufactured exclusively with parts, equipment, and materials from off-island. Now, to the extent this Court might be concerned that if you find the interstate commerce is satisfied in this case, then where's the line? When would you not be able to find it? I can give you two examples, and also give you an example of where interstate commerce would probably prevent the government from ever charging the case in the first place, because that, in fact, happens to us quite often. The first scenario I would give you, and let me pause, uh, the definition of produce includes, uh, to alter. So, if you were to take a lawfully-issued state ID, let's say an 18-year-old takes a lawfully-issued state ID and exacto-knives his birth date and alters it to be 21, you, using materials produced exclusively from in-state, then that would be a sufficiency of the evidence problem. A birth certificate is also an identification document. Now, that is a paper record that is easily, uh, easily altered, and again, I think that that could easily be altered without parts, materials, or equipment that were produced out-of-state. Now, lastly, oftentimes we come upon a document, excuse me, a driver's license that is clearly fake. It does not line up with the driver's license that has been produced at DMV. We know they did not manufacture it, but we are without evidence, uh, to show where it came from or how it was made. For example, maybe it was made by a Chinese citizen, and they brought it. If we don't have that evidence, we don't prosecute, because we will not be able to establish interstate or foreign commerce. So, there are, um, lines to be drawn. This case is not it. And again, we focus on, you know, how the document was made and whether the implements for making it or altering it came from outside of CNMI. But, I mean, what about the use of the document going forward? Would that not affect commerce? Of course it would affect commerce, and you're right, and I don't think the case law support says that it must be a commercial driver's license versus a private. I mean, even in some of your hypotheticals or cases in which you're not charging, it seems that there's still an argument that nonetheless this, this document or license can then be used in a way that affects commerce, and so therefore the nexus would be met there, too. Yes, that's in addition to, to the extent that I'm understanding, Your Honor. Well, I mean, again, it just gets to the point that I'm not sure these limits that you're mentioning are really real limits, and that maybe that's the right answer here, that there are effectively are no limits. In a production case, because the charge here is production, I think the appellant's argument might have more weight if this was use, trafficking, transfer, or possession, but this is, what we're focusing in on is the manufacturer or production, and again, the production in this case was exclusively interstate and related to interstate commerce. Now, I think it's appropriate to look at the effect of that production afterwards, but that, that's only, that is in addition to, that's just additional evidence on the effect that this production had on interstate commerce. Unless the panel has any more questions. Thank you very much. Thank you. Your Honor, let me start where the government just left off. The government said that it wasn't, wouldn't charge if it was a birth certificate, not a driver's license. Well, that might be their discretion not to charge it, but if the court finds that federal nexus is met in this case, they could certainly meet it with a driver's, with a birth certificate, because you can take a birth certificate to another state and use that to prove that you're old enough to drink in an establishment and have commerce, so it's just a matter of their discretion. It's not a federal nexus if the court affirms on that grounds here. The Supreme Court, there are cases, I'm thinking particularly of the Jones case out of the Supreme Court, I think it was in 2000, where that was the federal arson statute and the court said, well, if we accept that burning this, setting fire to this house that was a private residence is a federal nexus because the materials to build the house come from out of state, then practically everything is federal nexus, so there are limits. And then on the, on the without lawful authority, the government has its trial brief, its cites to statute, well, that wasn't presented to the jury, and the question is, did the jury have enough evidence? Did the government present the jury with enough evidence to make that finding? It's not the job of this court, and I don't think the court can go out and say, oh, well, we went and looked and found, and we found evidence, we found the statute. Well, they didn't produce the statute. Well, there was testimony from a special agent. There was testimony from a special agent. And I agree with you, it was, it was somewhat equivocal because he couldn't, he couldn't cite the statute, but he said, yeah, it's a requirement. Yeah, but he didn't say. Why isn't that enough? Well, he, he said it's a requirement, but number one, he's an HSI agent, he's not a, he's not an expert on CNMI law. No, but that's. This was a renew, this was a renewal license and not an original license, so maybe you couldn't get an original license, but if you got an original license, maybe you could get a renewal license under the statute. We don't know. The jury didn't, didn't know that. It wasn't, it wasn't presented. Unless there are other questions. Thank you very much for your argument this morning. We thank both counsel, and this matter is submitted.
judges: THOMAS, BRESS, ALBA